

A TRUE COPY
ATTEST: ROBIN L. BLUME, CLERK

BY: *Sandra S. Shealy*

DEPUTY CLERK

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION**                    MDL No. 2873

## TRANSFER ORDER

**Before the Panel**:*  Plaintiffs in the three actions listed on Schedule A move under Panel Rule 7.1 to vacate our orders that conditionally transferred their respective actions to the District of South Carolina for inclusion in MDL No. 2873.  Defendants Tyco Fire Products, LP, and Chemguard, Inc., oppose all three motions.  Defendant 3M Company opposes the motions brought by the *Mauldin* and *Poynter-Abell* plaintiffs.  Defendants Dawn Chemical Corporation of Wisconsin, Inc., and Royal Chemical Company, Ltd., oppose the motion brought by plaintiffs in the *Nessel* action.

In support of their motions to vacate, plaintiffs in all three actions argue that federal subject matter jurisdiction over their respective actions is lacking, and that their pending motions for remand to state court should be decided before transfer.  The Panel has held that such jurisdictional objections generally do not present an impediment to transfer.[1]  *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001).  Plaintiffs can present their remand arguments to the transferee court.

Plaintiffs in the *Mauldin* and *Poynter-Abell* actions also argue that transfer of their actions is inappropriate because they do not involve allegations of groundwater contamination.  Rather, plaintiffs allege that they are or were firefighters who were exposed to per- or polyfluoroalkyl substances (PFAS) through use of aqueous film-forming foams (AFFFs), which are used to extinguish fires, and by wearing certain protective clothing and gear that allegedly contained PFAS.  Plaintiffs thus argue that their actions do not involve the same factual core as the actions pending in MDL No. 2873.

---

* Judge David C. Norton did not participate in the decision of this matter.

[1] Panel Rule 2.1(d) expressly provides that the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending.  Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on a remand motion if it chooses to do so.  Indeed, the transferor court in the Western District of Michigan *Nessel* action denied plaintiffs' remand motion on January 6, 2021.

- 2 -

Plaintiffs are correct that our transfer orders in this docket to date have involved allegations that AFFFs used at airports, military bases, or other locations to extinguish liquid fuel fires caused the release of perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA, both of which are types of PFAS) into local groundwater and contaminated drinking water supplies. Plaintiffs also are correct that we have been cautious to avoid unnecessarily expanding this MDL to encompass non-AFFF products. *See, e.g.*, Order Denying Transfer at 1–2, MDL No. 2873 (J.P.M.L. Mar. 27, 2020), ECF No. 620 (declining to transfer eight actions that did not allege injury from AFFF use). Even so, MDLs can naturally expand to encompass other claims involving the products at issue and presenting similar factual questions. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, MDL No. 2543, 2014 WL 5597269, at 1 n.1 (J.P.M.L. Oct. 22, 2014) ("While MDL No. 2543 initially included only actions asserting economic damages, it has been expanded to include personal injury and wrongful death actions."). This is such an instance.

The "direct exposure" claims in *Mauldin* and *Poynter-Abell* share several important factual questions with the groundwater contamination cases in MDL No. 2873. Both sets of cases involve factual questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products. Centralization of these direct exposure claims thus will eliminate duplicative discovery and prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice).

Moreover, the parties do not dispute that MDL No. 2873 already includes more than 350 direct exposure actions by firefighters that were filed directly in the transferee court. At least one firefighter action was transferred by the Panel through the conditional transfer order process without opposition. The plaintiff fact sheet used in the MDL for personal injury claims contains questions regarding direct exposure and use of AFFF products. *See* Case Mgmt. Order No. 5, Ex. 1, at 3–4, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, C.A. No. 2:18-mn-02873 (D.S.C. Aug. 7, 2019), ECF No. 205 (asking whether "you [have] ever been employed, trained as, or volunteered as a firefighter" and requesting specifics about the use of AFFFs, training provided, and the protective equipment worn"). Transfer of the direct exposure claims in *Mauldin* and *Poynter-Abell* thus will not inhibit the efficiency of the pretrial proceedings in the MDL.[2]

Plaintiffs argue that their claims differ from the firefighter claims in the MDL because plaintiffs focus on the alleged harm stemming from the firefighters' protective equipment. Even if we accept this characterization (which defendants dispute), *Mauldin* and *Poynter-Abell* still

---

[2] Plaintiffs argue that we should discount the pendency of the direct exposure actions in the MDL because neither the Panel nor the transferee court has yet had to resolve any opposition to including these cases in the MDL. The problem with this argument is that, were we to decline to transfer *Mauldin* and *Poynter-Abell*, there would still be a large mass of direct exposure cases in the MDL. Denying transfer would only ensure that multiple courts would have to address the common factual issues and pretrial proceedings presented by these actions.

- 3 -

involve allegations that the use of AFFFs to extinguish fires caused plaintiffs' injury. "Section 1407 does not require a compete identity or even majority of common factual issues as a prerequisite to transfer." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).

Finally, plaintiffs insist that transfer will cause them inconvenience and prejudice, as many of the firefighter plaintiffs are retired and elderly, and many, if not most, of plaintiffs' witnesses are located in California and Missouri. This argument is not persuasive. Centralization under Section 1407 is for pretrial proceedings only, and there usually is no need for parties or witnesses to travel to the transferee court for depositions or court hearings. *See In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003). In any event, transfer of an action is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay. *See In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012) ("[W]e look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.").

Plaintiffs in the Western District of Michigan *Nessel* action—the Attorney General and State of Michigan—oppose transfer on different grounds. Plaintiffs in *Nessel* seek damages and injunctive relief relating to alleged contamination of groundwater with PFAS stemming from use of "commercial" AFFF products (as opposed to "Mil-Spec" AFFF products that were manufactured in accordance with military specifications and primarily used at military bases and airports). Plaintiffs have filed a separate action relating to Mil-Spec AFFF products. That action was transferred to MDL No. 2873 without opposition. *See Nessel v. E.I. du Pont de Nemours & Co.*, C.A. No. 2:20-03307 (D.S.C.).

Plaintiffs primarily argue that their action differs from those in the MDL, including actions in the MDL brought by other states, because they do not assert strict products liability or negligence claims. Many actions in the MDL, however, like *Nessel*, assert state-law claims for trespass and nuisance, as well as claims under environmental protection statutes. Indeed, our initial order centralizing this litigation encompassed actions asserting nuisance claims, trespass claims, state environmental statutory claims, and federal environmental claims under the Resource Conservation Act, the Clean Water Act, and the Comprehensive Environmental Response Compensation and Liability act. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1395 (J.P.M.L. 2018) (rejecting argument that the causes of action and parties in the AFFF actions differed so significantly that any efficiencies from centralization would be offset by delay). This litigation is not limited to actions asserting products liability claims.[3]

_____

[3] Plaintiffs place too much emphasis on our order transferring *parens patriae* actions by the State of New York and the State of Ohio, which noted that those actions asserted products liability actions similar to those asserted in other actions in the MDL. *See* Transfer Order at 1–2, MDL No. 2873 (J.P.M.L. Apr. 2, 2019), ECF No. 384. We did not limit transfer of *parens patriae* actions to those presenting products liability claims.

- 4 -

The critical issue under Section 1407 is whether *Nessel* shares common questions of fact with the actions in the MDL. On this point, plaintiffs emphasize that their action pertains only to "commercial" AFFF products. We have rejected similar attempts to cabin MDL No. 2873 to Mil-Spec AFFF products. *See* Transfer Order at 2 n.2, MDL No. 2873 (J.P.M.L. June 5, 2019), ECF No. 446 ("The Panel did not limit this litigation to particular types of AFFF products."). Many of the claims pending in the MDL—including many of the previously-addressed direct exposure claims by firefighters—relate to commercial AFFF products. *Nessel* will share common factual questions with these actions and will benefit from pretrial coordination in the MDL.

Furthermore, it seems likely that plaintiffs' commercial AFFF and Mil-Spec AFFF actions will share common factual questions, as both involve contamination of the same groundwater in the State of Michigan. Indeed, this was a point of emphasis in the transferor court's order denying plaintiffs' motion for remand to state court. *See* Order Denying Mot. to Remand at 7, *Nessel v. Chemguard, Inc.*, C.A. No. 1:20-01080 (W.D. Mich. Jan. 6, 2021), ECF No. 60 ("[W]hile Plaintiffs attempt to surgically divide their complaints between Commercial and MilSpec AFFF, they cannot prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory, particularly when *Plaintiffs admit* that Defendants produced MilSpec AFFF and that PFAS from AFFF spread contamination throughout the state.") (emphasis in original). We previously rejected an attempt by a water authority to split its claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL. *See* Transfer Order at 2, MDL No. 2873 (J.P.M.L. Oct. 5, 2020), ECF No. 691 ("Plaintiff could have asserted all of these claims in the same action, but instead chose to split these claims across two actions. It would be inefficient for these actions to proceed separately and potentially prejudicial to the parties."). Likewise, it would inefficient for plaintiffs' commercial AFFF action to proceed separately from its Mil-Spec AFFF action.

Accordingly, after considering the argument of counsel, we find that the actions listed on Schedule A involve common questions of fact with the actions transferred to MDL No. 2873, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In our order centralizing this litigation, we held that the District of South Carolina was an appropriate Section 1407 forum for actions in which plaintiffs allege that AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOS and/or PFOA into local groundwater and contaminated drinking water supplies. The actions in the MDL share factual questions concerning the use and storage of AFFFs; the toxicity of PFAS and the effects of these substances on human health; and these substances' chemical properties and propensity to migrate in groundwater supplies. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d at 1394. *Nessel* similarly involves allegations that the groundwater in Michigan was contaminated by PFOS and/or PFOA stemming from use of AFFF products. And, for the reasons stated, direct exposure claims by firefighters, such as those in *Mauldin* and *Poynter-Abell*, will involve many of the same common questions of fact as the groundwater claims in the MDL.

- 5 -

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the District of South Carolina and, with the consent of that court, assigned to the Honorable Richard M. Gergel for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

Catherine D. Perry               Nathaniel M. Gorton
Matthew F. Kennelly              Roger T. Benitez
Dale A. Kimball

**IN RE: AQUEOUS FILM-FORMING FOAMS**
**PRODUCTS LIABILITY LITIGATION**                    MDL No. 2873

## SCHEDULE A

<u>Northern District of California</u>

MAULDIN, ET AL. v. 3M COMPANY, ET AL., C.A. No. 5:20-07212

<u>Western District of Michigan</u>

NESSEL, ET AL. v. CHEMGUARD, INC., ET AL., C.A. No. 1:20-01080

<u>Eastern District of Missouri</u>

POYNTER-ABELL v. 3M COMPANY, ET AL., C.A. No. 4:20-01568